## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PAUL EDWARD DURAN,

       Plaintiff,

vs.                                 No. CIV 13-0390 JB/LAM

ROBERT WOOLEVER and
GEORGE DIESEL, former Albuquerque
Police Officers,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Robert Woolever's Opposed Motion to Dismiss RICO Claims and Brief in Support of His Motion, filed June 26, 2014 (Doc. 35)("MTD"); and (ii) Defendant George Diesel's Motion to Join Defendant Robert Woolever's Opposed Motion to Dismiss RICO Claims and Brief in Support of His Motion, filed June 27, 2014 (Doc. 36)("Motion to Join MTD").  The Court held a hearing on August 8, 2014. The primary issue is whether the Court should dismiss any federal or state-law racketeering claims in the Complaint.  Because the parties all consent to dismissal without prejudice, and because the Complaint fails to plead the elements of either a federal or state-law racketeering claim, the Court will grant the MTD and dismiss all such claims without prejudice.

## FACTUAL BACKGROUND

As it must at the motion-to-dismiss stage, the Court takes its facts from Plaintiff Paul Duran's Complaint to Recover Damages for Injury in the United States Federal District Court, filed April 26, 2013 (Doc. 1)("Complaint").  Duran alleges that, on the night of April 26, 2010, Defendant George Diesel, then an officer with the Albuquerque Police Department ("APD"),

sprayed Duran in the face with mace.[1]  See Complaint ¶ 1, at 2.  Defendant Robert Woolever,

also then an officer with the APD, then handcuffed Duran, and both Defendants then beat Duran

while he was handcuffed.  See Complaint ¶ 1-2, at 2.  Duran alleges that both Defendants made

false police reports -- of unspecified contents -- against him, and that the Defendants' actions

subjected him "to an outrage[ou]s abuse of prosecutorial procedures."  Complaint ¶ 3, at 3.

Duran alleges that the Defendants' actions cost him an estimated $31,300,000.00, and that,

"under [the] New Mexico RICO Act," he is entitled to three times this amount, which comes out

to $93,900,000.00.  Complaint ¶¶ 1-6, at 3.  These damages are the result of: (i) lost wages of

$30,000.00 per year as a professional painter, which Duran says comes out to $900,000.00, see

Complaint ¶ 1, at 3; (ii) "the loss of a meteorite worth . . . 400 thousand dollars," Complaint ¶ 2,

at 3; (iii) a breach of contract by the State of New Mexico[2] costing Duran $15,000,000.00, see

Complaint ¶ 3, at 3; (iv) loss of a contract that Duran would have received by winning the

X Factor competition[3] in Los Angeles, California, see Complaint ¶ 4, at 3; and

(v) $10,000,000.00 in mental anguish, pain, and suffering damages, see Complaint ¶ 5, at 3.

## PROCEDURAL BACKGROUND

Duran filed the Complaint on April 26, 2013; it alleges no formal claims, but it refers to a

"civil rights suit under 42 U.S.C. [§] 1983" and uses the term "excessive force" in relation to

---

[1]The Complaint says "maze," but the Court concludes, based on context clues from the surrounding text, that Duran probably meant "mace."

[2]The Court is not sure what Duran is referencing with this request for relief, so it will quote this portion of the Complaint in its entirety: "Plaintiff is claiming that a state contract between him and the state [of] New Mexico of a paid bond was reneged by the state illegally resulting in this claim of 15 million dollars 'False Arrest['] that occurred on June 22 2010." Complaint ¶ 3, at 3.

[3]The Court believes that Duran is referring to a televised musical competition, similar to American Idol, and, apparently, created by Simon Cowell, one of the founders of American Idol. See The X Factor, Wikipedia.org, en.wikipedia.org/wiki/The_X_Factor.

both Defendants' actions.  Complaint at 1; id. ¶¶ 1, 2, at 2.  The Court construes the Complaint as alleging a § 1983 claim for excessive force in violation of the Fourth Amendment to the Constitution of the United States of America.[4]  The Court construes Duran's statement in the "Relief Requested" section of his Complaint -- that he "is claiming that under New Mexico RICO Act law that plaintiff is entitled three times the amount" -- as a claim under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961-1968 ("RICO"), as well as a claim under New Mexico's analogous statute, N.M. Stat. Ann. § 30-42-1 to -6.[5]  See Complaint ¶ 6, at 3.

Woolever filed the MTD exactly two months later, with Diesel requesting to join the MTD -- but adding no new argument -- the next day.  See MTD at 1; Motion to Join at 1 ("Diesel relies on the same points, authorities [sic] as cited by Defendant Woolever and joins in his opposed Motion to Dismiss RICO claims.").  Woolever asks the Court to dismiss any RICO or

---

[4]The Complaint also contains the shadow of a claim for malicious abuse of process, malicious prosecution, or false arrest:

> Plaintiff claims that the illegal actions committed on the night of April 26[,] 2010[,] by former officers Woolever and Diesel against plaintiff has subjected the plaintiff to an outrage[ou]s abuse of prosecutorial procedures by officers in the second Judicial District in the State of New Mexico that violated the plaintiff's civil rights.

Complaint ¶ 3, at 3.  Any such claim, if it exists, falls short of the pleading requirements so that the Court could not analyze it properly.  For example, the Court does not know with what crime Duran was charged or if he was charged at all, let alone the factual basis for the Defendants' lack of probable cause, a necessary element of all of these claims.  See Mocek v. City of Albuquerque, 3 F. Supp. 3d 1002, 1065-66, 1082-84 (D.N.M. 2014)(Browning, J.).

[5]The Plaintiff's reference to the "New Mexico RICO Act law" is ambiguous.  Complaint ¶ 6, at 3.  On one hand, it appears to refer exclusively to a New Mexico statute; on the other hand, the New Mexico racketeering statute is not technically called RICO -- RICO is the name of the federal statute.  This confusion is exacerbated by the fact that lawyers often colloquially refer to state-law RICO analogues as "little RICOs."  Note 7, supra, at 19.  The Court will, thus, analyze the Complaint as if it asserted both a RICO claim and a state-law racketeering claim.

state-law equivalent claims that Duran alleges.  See MTD at 1.  He asserts that, to establish either claim, a plaintiff "must plead 'two racketeering activities within a ten-year period,' 'a relationship between the predicates' and 'the threat of continuing activity.'"  MTD at 3 (quoting 18 U.S.C. § 1961(5); N.M. Stat. Ann. §§ 30-42-4A, 30-42-3C to -3D).  Woolever also contends that the claims require the plaintiff to establish the existence of an enterprise, apart from the individual defendant, through which the individual defendant commits his racketeering acts.  See MTD at 3-5.

Duran responded to the MTD, arguing that, while the RICO and state racketeering claims are deficient currently, he will cure them by amending the Complaint at the first available opportunity.  See Response to Defendant Woolever's Motion to Dismiss Plaintiff's RICO Claims and George Diesel's Motion to Join [Docs. 35 and 36] at 1-2, filed July 10, 2014 (Doc. 37)("Response").  Duran asserts that no scheduling order has yet been entered in the case and that the current Complaint was drafted pro se, before Duran retained counsel.  See Response at 1.  Duran asserts that the Court has not yet set a deadline for amending the Complaint and that, thus, only "[a]fter Plaintiff has had an opportunity to file his First Amended Complaint and join appropriate parties . . . should a Motion to Dismiss based on insufficient factual or legal pleading be pled, briefed, and entertained."  Response at 2.  Duran also responds to Woolever's argument that Duran failed to name a corrupt enterprise by contending that the police department for which the two Defendants worked could itself qualify as a corrupt enterprise -- Duran asserts that the Key West Police Department was declared a corrupt enterprise under RICO in 1984.  See Response at 2 (citing Nancy Klingener, From Wrecking to Smuggling to Development, Corruption, Investigations Have Long History, Key West Citizen (May 22, 2005)).  Duran asserts that both Defendants have displayed a

pattern and use of excessive force in unrelated civil cases, and an established pattern of conduct, in defiance [of] and indifference to the Constitution (and the City of Albuquerque's inability, failure, or refusal to control the actions of its police department), the threat of continuing activity will likely be established by Plaintiff.

Response at 3 (citing <u>Nicholas Blume v. Woolever</u>, No. CIV 14-0120 MV/SCY (D.N.M.)).

Woolever replied to the Response, first arguing that "it is patently untrue that 'Plaintiff's attorney has not had the opportunity to amend Plaintiff's *pro se* Complaint.'" Defendant Robert Woolever's Reply in Support of His Opposed Motion to Dismiss RICO Claims at 2, filed July 25, 2014 (Doc. 42)("Reply"). He states:

Attorney Derek Garcia, who also filed the Response, has continuously represented Plaintiff since when he entered an appearance for the Plaintiff over one year ago on May 7, 2013. It is undisputable that Plaintiff's attorney had an opportunity to amend with the 415 days before Mr. Woolever filed his Motion. Plaintiff also had the opportunity to amend as a matter of right 278 days before Mr. Diesel answered the Complaint; neither Mr. Diesel nor Mr. Woolever were properly served.

Reply at 2. Woolever further asserts that Duran's description of the alleged 1984 Key West Police Department case was cribbed verbatim from a website called "Mafia Wiki," which Woolever says lacks "journalistic credibility." Reply at 2 & n.1 (citing <u>Key West PD</u>, Mafia Wiki, http://mafia.wikia.com/wiki/RICO).

The Court held a hearing on August 8, 2014. <u>See</u> Transcript of Hearing (taken August 8, 2014)("Tr.").[6] Duran's attorney admitted that he had not been in contact with Duran, and conceded that his

initial thought in opposing the dismissal of the RICO claims is because I did not understand his factual basis behind making those. He didn't adequately articulate it in his pro se complaint from what I could see. So I didn't have any basis to agree to withdraw RICO claims or not withdraw the RICO claims, then since I

---

[6]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

didn't file the first amended complaint that does not include the RICO claims. At this time because I do not have contact with my client, I didn't see it ethically sufficient to proceed forward on those claims.

Tr. at 9:17-10:3 (Garcia). Duran's attorney consented to dismiss any RICO claims without prejudice, leaving open the opportunity for him to amend the Complaint to re-allege the claims at a later date upon speaking to his client. See Tr. at 11:24-12:3 (Garcia). Woolever and Diesel both agreed with that resolution. See Tr. at 12:22-13:4 (Court, Williams, Walker).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550

U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d at 1247 (citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other

motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint.  See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).  The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific

or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007);
Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243,
251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla.
Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this
practice, the Court has permitted this practice, see Anderson Living Trust v. WPX Energy Prod.,
LLC, No. CIV 12-0040 JB/KBM, 2014 WL 2750652, at *17, *37-39 (D.N.M. May 16,
2014)(Browning, J.).

## LAW REGARDING AMENDING THE PLEADINGS UNDER RULE 15

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides: "In all other cases, a
party may amend its pleading only with the opposing party's written consent or the court's leave.
The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Under
rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See
In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.);
Youell v. FNU Russell, No. CIV 04-1396 JB/WDS, 2007 WL 709041, at *1-2 (D.N.M. Feb. 14,
2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Coop., No. CIV 05-0073 JB/KBM, 2005
WL 3664299, at *1-2 (D.N.M. Sept. 23, 2005)(Browning, J.).  The Supreme Court of the United
States has stated that, in the absence of an apparent reason such as "undue delay, bad faith or
dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed,
undue prejudice to the opposing party by virtue of allowance of the amendment, futility of
amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. 178, 182
(1962).  Furthermore, the Tenth Circuit has held that district courts should grant a plaintiff leave
to amend when doing so would yield a meritorious claim.  See Curley v. Perry, 246 F.3d 1278,
1284 (10th Cir. 2001).  See also In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a), however, where the proposed "amendment would be futile." Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999). See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80. An amendment is "futile" if the pleading "as amended, would be subject to dismissal." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Comm'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)). A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)). The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey v. Marion Labs., Inc., 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185.

Frank v. U.S. West, Inc., 3 F.3d at 1365-66. "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Sch., No. CIV 05-1165 JB/RLP, 2007 WL 1306814, at *2 (D.N.M. Mar. 12, 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)).

The Tenth Circuit has recognized that there is an open issue as to rule 16's application to pleadings amendments once the time under a scheduling order for seeking leave for pleading amendments has passed. See Bylin v. Billings, 568 F.3d 1224, 1232 n.10 (10th Cir.

2009)("Because we decline to consider the Bylins' Rule 16 argument, we leave for another day the question of whether this circuit should apply Rule 16 when a party seeks to amend a pleading after a court-imposed deadline.").  "Rule 16 only allows such amendments for 'good cause,' an arguably more stringent standard than the standards for amending a pleading under Rule 15." Bylin v. Billings, 568 F.3d at 1230 (quoting Fed. R. Civ. P. 16(b)(4)).  Rule 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The rule "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment."  Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.).  "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d at 1313.  See Gerald v. Locksley, No. CIV 10-0721 JB/LFG, 2011 WL 3510845, at *13-14 (D.N.M. Aug. 1, 2011)(Browning, J.).

The Tenth Circuit has interpreted rule 16 as imposing a "good cause" standard to untimely motions to amend when a scheduling order governs the case.  Minter v. Prime Equip. Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).  "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.  The Tenth Circuit has noted that there is a "'rough similarity' between the 'undue delay' standard of Rule 15 and the 'good cause' standard of Rule 16."  Bylin v. Billings, 568 F.3d at 1231.  Thus, the Tenth Circuit has indicated that the application of the rule 16 standard will often lead to the same outcome as applying the rule 15 standard.  See Bylin v. Billings, 568 F.3d at 1231-32.

This Court has previously stated that its rule 16(b) good-cause inquiry focuses on the diligence of the party seeking to amend the scheduling order.  See Walker v. THI of N.M. at

Hobbs Ctr., 262 F.R.D. 599, 602-03 (D.N.M. 2009)(Browning, J.); Guidance Endodontics, LLC

v. Dentsply Intern., Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672505, at *2-3 (D.N.M. Sept. 29,

2009)(Browning, J.); Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., Nos. CIV 02-1146

JB/LFG & CIV 03-1185 JB/LFG, 2007 WL 2296955, at *3 (D.N.M. June 5,

2007)(Browning, J.).

> Rule 16(b)'s "good cause" standard is much different than the more lenient
> standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of
> the movant, or the prejudice to the opposing party. Rather, it focuses on the
> diligence of the party seeking leave to modify the scheduling order to permit the
> proposed amendment. Properly construed, "good cause" means that scheduling
> deadlines cannot be met despite a party's diligent efforts. In other words, this
> court may "modify the schedule on a showing of good cause if [the deadline]
> cannot be met despite the diligence of the party seeking the extension."
> Carelessness is not compatible with a finding of diligence and offers no reason for
> a grant of relief.

Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997)(citations

omitted), aff'd, 129 F.3d 116 (4th Cir. 1997). See Denmon v. Runyon, 151 F.R.D. 404, 407

(D. Kan. 1993)(affirming an order denying the plaintiff's motion to amend after the deadline that

the scheduling order established had passed and stating that, "[t]o establish 'good cause,' the

party seeking to extend the deadline must establish that the scheduling order's deadline could not

have been met with diligence"). Cf. SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1518-19 (10th

Cir. 1990)(affirming, under rule 16(b), denial of a motion to amend an answer to include a

compulsory counterclaim filed three months after the scheduling order deadline).

> In Broitman v. Kirkland (In re Kirkland), 86 F.3d 172 (10th Cir. 1996), the Tenth Circuit

dealt with the definition of "good cause" in the context of rule 4(j). The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it
> would appear to require at least as much as would be required to show excusable
> neglect, as to which simple inadvertence or mistake of counsel or ignorance of the
> rules usually does not suffice, and some showing of "good faith on the part of the

party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (emphasis omitted)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987))(internal quotation marks omitted).   The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"   Broitman v. Kirkland (In re Kirkland), 86 F.3d at 175.

Other courts within the Tenth Circuit have held that "the 'good cause' standard primarily considers the diligence of the party . . . [.]   The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.   Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."   Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(internal quotation marks omitted)(omission in original).   The Honorable Dale A. Kimball, United States District Judge for the District of Utah, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel.   See Kee v. Fifth Third Bank, No. CIV 06-00602 DAK/PMW, 2008 WL 183384, at *1 (D. Utah Jan. 17, 2008)(Kimball, J.).   Judge Kimball reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order."   Kee v. Fifth Third Bank, 2008 WL 183384, at *1.

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. As the Supreme Court has explained, there are only two allegations required to state a cause of action under § 1983: (i) "some person has deprived [the plaintiff] of a federal right;" and (ii) "the person who has deprived [the plaintiff] of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980)(emphasis added)(citing Monroe v. Pape, 365 U.S. 167, 171 (1961)).

The Tenth Circuit has stated that "Section 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." Jones v. City & Cnty. of Denver, 854 F.2d 1206, 1209 (10th Cir. 1988)(citing Gomez v. Toledo, 446 U.S. at 640)(emphasis in original). The rule in Jones v. City & County of Denver effectuates Congress' intent when enacting § 1983, which was to enforce the Fourteenth Amendment, and the federal rights it protects, against a wave of violence that the Ku Klux Klan perpetrated during Reconstruction. See Ngiraingas v. Sanchez, 495 U.S. 182, 187-88 (1990)(explaining that § 1983 "was enacted for the purpose of enforcing the provisions of the Fourteenth Amendment" following "a wave of murders and assaults . . . against both blacks and Union sympathizers" that the Ku Klux Klan committed (citations omitted)(internal quotations omitted)). In Monell v. Department of Social Services of New York City, 436 U.S. 658 (1978), the Supreme Court quoted a statement by the Chairman of the Senate Judiciary Committee that § 1983

> is one that I believe nobody objects to, as defining the rights secured by the Constitution when they are assailed by any State law or under color of any State law, and it is merely carrying out the principles of the civil rights bill, which have since become a part of the Constitution [as the Fourteenth Amendment].

Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. at 684-85 (instructing that "statements of the supporters of [§ 1983] corroborated that Congress, in enacting [§ 1983], intended to give a broad remedy for violations of federally protected civil rights").

"[A] breach of state procedural requirements is not, in and of itself, a violation of the Due Process Clause." Atencio v. Bd. of Educ., 658 F.2d 774, 779 (10th Cir. 1981). A violation of a state's procedural requirements becomes a violation of the Due Process Clause when the plaintiff has been "denied a fair forum for protecting his state rights." Atencio v. Bd. of Educ., 658 F.2d at 779-80. The Tenth Circuit agreed with the United States Court of Appeals for the Sixth Circuit that

> [i]t is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions.

Atencio v. Bd. of Educ., 658 F.2d at 779 (quoting Bates v. Sponberg, 547 F.2d 325, 329-30 (6th Cir. 1976)).

When state officials fail to comply with a state's procedural requirements, a plaintiff may sue only if that failure also violates the minimum requirement of a fair forum under the Due Process Clause. See Atencio v. Bd. of Educ., 658 F.2d at 779-80. When a state guarantees more procedural rights than the Due Process Clause demands, § 1983 cannot be used to expand the Due Process Clause to cover that violation. See Atencio v. Bd. of Educ., 658 F.2d at 779 n.11 ("We are not persuaded by cases which appear to hold that where a state grants procedural protections for a property right above and beyond the constitutional minimum, these additional provisions are themselves enforceable under § 1983 and the Due Process Clause."); Eguia v. Tompkins, 756 F.2d 1130, 1137 (5th Cir. 1985)("If the State of Texas demands that its officials

afford a more elaborate process than the Constitution requires, its demand cannot alone expand the boundaries of federal, constitutional due process." (citations omitted)); Goodrich v. Newport News School Bd., 743 F.2d 225, 227 (4th Cir. 1984)("When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations." (citations omitted)).  As the United States Court of Appeals for the Fifth Circuit has noted, a contrary rule would mean that a citizen's federal right to due process would depend on where he lived and what procedures his home state chose to guarantee, instead of applying in the same procedure to all Americans regardless of their residence.  See Eguia v. Tompkins, 756 F.2d at 1137 n. 11 ("To hold otherwise would be to acknowledge a constitutional requirement of one due process for the citizens of Texas, another for the citizens of Louisiana . . . .  We decline to make such a shambles of the Constitution's uniform grant of rights to all United States citizens.").

## LAW REGARDING RACKETEERING CLAIMS

Both federal and state laws prohibit a variety of racketeering activities.  New Mexico's racketeering laws are similar to the federal RICO statute, as the latter provided the model for the former.  Both federal and state law provide for civil remedies for private individuals and organizations harmed by racketeering activities.

### 1.     The Federal RICO Act.

The federal RICO statute proscribes a wide variety of conduct. Specifically, RICO provides:

    (a)    It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to

use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce . . . .

18 U.S.C. § 1962(a).  RICO further provides:

(b)     It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d)     It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(b)-(c).  "Racketeering activity" and "pattern of racketeering activity" are the key concepts underlying RICO, and the statute gives the two phrases precise meanings.

Section 1962(1) defines "racketeering activity" by providing an exhaustive and extensive list of federal offenses that constitute racketeering activity, as well as a more general definition of state offenses that are considered racketeering activity.  The state crimes that are treated as racketeering activity include "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1962(1)(A).  Among the list of federal predicate offenses are mail fraud, wire fraud, securities fraud, retaliating against a witness or victim, and engaging in monetary transactions in property derived from certain specified criminal activity.  See 18 U.S.C. § 1962(1)(B).  A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding

any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  In other words, a pattern of racketeering activity is any two racketeering acts within the space of ten years.

RICO allows for civil suits by "any person injured in his business or property by reason of violation of section 1962 of [RICO]."  18 U.S.C. § 1964(c).  RICO also mandates treble damages and recovery of reasonable attorney's fees for a successful claim.  See 18 U.S.C. § 1964(c).  The Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, however, limited the scope of potential civil RICO causes of action.  In a civil RICO case, a racketeering violation cannot be founded "upon any conduct that would have been actionable as fraud in the purchase or sale of securities," unless the offender was criminally convicted of activity "in connection with the fraud."  18 U.S.C. § 1964(c).  Additionally, several courts have held that other federal-fraud offenses, such as mail and wire fraud, can also not be used as predicate offenses where the underlying conduct would be actionable as securities fraud.  See, e.g., Bald Eagle Area Sch. Dist. v. Keystone Fin., 189 F.3d 321, 330 (3d Cir. 1999); Blythe v. Deutsche Bank A.G., 399 F. Supp. 2d 274, 278-82 (S.D.N.Y. 2005).

The Supreme Court and the Tenth Circuit have held that merely showing two acts of racketeering within the requisite ten-year period is not sufficient to show an actual pattern of racketeering activity.  "[T]he statement that a pattern 'requires at least' two predicates implies 'that while two acts are necessary, they may not be sufficient.'"  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237 (1989).  Rather, based upon RICO's legislative history and the ordinary usage of the word "pattern," a pattern of racketeering activity "requires the showing of a relationship between the predicates" and "the threat of continuing activity."  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 239 (citation omitted)(internal quotation marks omitted).  As the Tenth Circuit has

explained, both elements must be present.   Even if the racketeering activities are part of a common scheme, there is no showing of a RICO claim if the plaintiff has "failed to show that they pose a threat of continuing criminal activity."   Duran v. Carris, 238 F.3d 1268, 1271 (10th Cir. 2001).

### 2.        The New Mexico Racketeering Act.

The Racketeering Act, N.M. Stat. Ann. §§ 30-42-1 to -6, closely tracks RICO's provisions.[7]   The New Mexico statute makes it "unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity."   N.M. Stat. Ann. § 30-42-4C.   The state Racketeering Act also prohibits conspiring to engage in any violation of the Racketeering Act.   See § 30-42-4D.   The state act defines "racketeering activity" as "any act that is chargeable or indictable under the laws of New Mexico and punishable by imprisonment for more than one year, involving any of" several enumerated offenses, including larceny, fraud, embezzlement, extortion, fraudulent securities practices, and violations "of the provisions of Section 4 of the Money Laundering Act."   N.M. Stat. Ann. § 30-42-3A.   The state act defines "pattern of racketeering activity" as

> engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in Subsections A through D of Section 30-42-4 NMSA 1978; provided at least one of the incidents occurred after the effective date of the racketeering act [1980] and the last incident occurred within five years after the commission of a prior incident of racketeering.

---

[7]The Racketeering Act is one of thirty-five "little RICOs" -- laws that state legislatures passed, modeled after the federal RICO.   G. Robert Blakey, Time-Bars: Rico -- Criminal and Civil -- Federal and State, 88 Notre Dame L. Rev. 1581, 1638-39 (2013).   The principal draftsman of the federal RICO, Professor G. Robert Blakey of Cornell Law School and later Notre Dame Law School, also assisted state legislatures in drafting their own statutes as state racketeering acts proliferated across the country.   See G. Robert Blakey, Notre Dame Law School, law.nd.edu/directory/g-blakey.

N.M. Stat. Ann. § 30-42-3D.  The state statute provides for a civil cause of action: "A person who sustains injury to his person, business or property by a pattern of racketeering activity may file an action in the district court for the recovery of three times the actual damages proved and the costs of the suit, including reasonable attorney's fees."  N.M. Stat. Ann. § 30-42-6A.

It is unclear whether the state Racketeering Act mirrors the federal RICO statute in requiring a showing of continuity and ongoing threat as part of demonstrating a pattern of racketeering activity.  The Court of Appeals of New Mexico has required showings of continuity to establish that an informal organization is an enterprise.  See State v. Rael, 1990-NMCA-068, ¶¶ 10-12, 981 P.2d 280, 284 (N.M. Ct. App. 1999).

## ANALYSIS

The Court grants both the MTD and the Motion to Join, and dismisses all RICO and state racketeering claims in the Complaint without prejudice.  First, the parties have agreed to this outcome.  See Tr. at 9:25-10:3 (Garcia)("At this time because I do not have contact with my client, I didn't see it ethically sufficient to proceed forward on those claims."); id. at 11:20-12:3 (Court, Garcia)(THE COURT: "So I guess on the motion to dismiss you could either withdraw the RICO claims or I could dismiss the RICO claims without prejudice.  What would you prefer on that[?]"  MR. GARCIA: "I think dismissal agreed without prejudice in case my client does have sufficient [evidence] . . . ."); id. at 12:22-13:4 (Court, Williams, Walker)(THE COURT: "Are the defendants agreeable to me granting your motion to dismiss the RICO portion of the complaint without pre[judice?]"  MS. WILLIAMS: "Yes, Your Honor."  THE COURT: "Does that work for you, Ms. Walker?"  MS. WALKER: "Yes, Your Honor.").

Second, dismissal without prejudice is appropriate on the merits.  The federal RICO requires either "a pattern of racketeering activity" or "collection of an unlawful debt," neither of

which the Complaint alleges.  18 U.S.C. § 1962(a), (b), (c).[8]  The Complaint neither mentions nor alludes to debt at all.  "Racketeering activity" is a term of art that RICO defines to encompass a list of serious state and federal crimes, and a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(1), (5).  The Complaint alleges no specific crime at all, let alone two of the enumerated crimes that constitute racketeering activity under § 1961(1).

The state-law analogue to RICO appears to be narrower than its federal counterpart, in that it does not mention unlawful debt collection.  See N.M. Stat. Ann. § 30-42-4.  It also requires "a pattern of racketeering activity," N.M. Stat. Ann. § 30-42-4A, B, C, and defines racketeering, similar to the federal statute, to include an exhaustive list of twenty-five criminal offenses, see N.M. Stat. Ann. § 30-42-3A.  Again, the Complaint neither explicitly mentions nor alludes to any of these crimes, let alone a "pattern" of them, which, like the federal statute, requires two or more racketeering incidents.  N.M. Stat. Ann. § 30-42-3D.

**IT IS ORDERED** that: (i) Defendant Robert Woolever's Opposed Motion to Dismiss RICO Claims and Brief in Support of His Motion, filed June 26, 2014 (Doc. 35), is granted; and (ii) Defendant George Diesel's Motion to Join Defendant Robert Woolever's Opposed Motion to Dismiss RICO Claims and Brief in Support of His Motion, filed June 27, 2014 (Doc. 36), is granted.  All claims in Plaintiff Paul Duran's Complaint to Recover Damages for Injury in the

---

[8]These three subsections, along with subsection (d), which covers conspiracy to violate one of the other subsections, constitute the entire swath of conduct that RICO proscribes; RICO's other provisions contain definitions, permissible remedies, venue and process, and evidentiary restrictions.

United States Federal District Court, filed April 26, 2013 (Doc. 1), arising under the federal

Racketeering Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961-1968, or the

state Racketeering Act, N.M. Stat. Ann. §§ 30-42-1 to -6, are dismissed without prejudice.


_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Derek V. Garcia
Law Office of Derek V. Garcia, P.C.
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Patricia Williams
Wiggins, Williams & Wiggins
Albuquerque, New Mexico

     *Attorneys for Defendant Robert Woolever*

David Tourek
  City Attorney
Trisha A. Walker
  Assistant City Attorney
City of Albuquerque Legal Department
Albuquerque, New Mexico

     *Attorneys for Defendant George Diesel*